IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROOSEVELT HOGGARD, | ) |
| | ) |
| Plaintiff, | ) C.A. No. |
| | ) |
| v. | ) |
| | ) |
| THE U.S. DEPARTMENT OF VETERANS AFFAIRS, THE UNITED STATES OF AMERICA, ROOPARANI M. BHAT, M.D., MARY KATHLEEN WILLIAMS, RN, KATHY H. SULLIVAN, NP, WENDY KATHERINE OTTENBACHER, M.D., VERONICA CARRANZA RIOS, M.D., AMANDA WEBB-DAVIDSON, MHS, PA-C, | ) |
| | ) |
| Defendants. | ) |

# COMPLAINT

Plaintiff, Roosevelt Hoggard ("Plaintiff"), files this Complaint against the United States Department of Veterans Affairs (hereinafter "VA") and the United States of America, ("Defendants"). Plaintiff alleges as follows:

**Nature of the Action**

1. This is an action seeking recovery of compensatory damages and other relief arising from the medical negligence of the defendants through their employees and agents in the treatment of Roosevelt Hoggard at the Wilmington Veterans Administration Medical Center ("WVAMC") in Wilmington, Delaware.

## The Parties

2. Plaintiff, Roosevelt Hoggard, is an adult citizen of the United States and a resident of the State of Delaware.

3. Defendant, the United States Department of Veterans Affairs ("VA") is an executive department of the United States, which may be served pursuant to Fed. R. Civ. P. 4(i).

4. Defendant, the United States of America, may be served pursuant to Fed. R. Civ. P. 4(i).

5. At all relevant times, Rooparani M. Bhat, M.D., an internal medicine physician, has been an agent, servant and/or employee of the VA and can be served at 390 Mitch Road, Wilmington, DE 19804.

6. At all relevant times, Mary Kathleen Williams, RN, has been an agent, servant and/or employee of the VA and can be served at 800 Health Services Drive, Seaford, DE 19973.

7. At all relevant times, Kathy H. Sullivan, NP, has been an agent, servant and/or employee of the VA and can be served at 1601 Kirkwood Highway, 6th Floor, Wilmington, DE 19805.

8. At all relevant times, Wendy Katherine Ottenbacher, M.D., has been an agent, servant and/or employee of the VA and can be served at 701 N. Clayton Street, Wilmington, DE 19805.

9. At all relevant times, Veronica Carranza Rios, M.D., has been an agent,

servant and/or employee of the VA and can be served at 1601 Kirkwood Highway, Wilmington, DE 19805.

10. At all relevant times, Amanda Webb-Davidson, MHS, PA-C, has been an agent, servant and/or employee of the VA and can be served at 1601 Kirkwood Highway, Wilmington, DE 19805.

11. During the period from at least July 2016 through July 2024, medical providers at WVAMC, acting within the course and scope of their employment and agency, provided healthcare to Roosevelt Hoggard.

12. Upon information and belief, the VA and those medical providers at the WVAMC who provided healthcare to Roosevelt Hoggard are healthcare providers as defined by 18 Del. C. §6801(5).

13. At all times relevant to this Complaint, the medical providers at the WVAMC represented that they were employees, agents, ostensible agents and/or apparent agents of the VA and the United States of America.

### Jurisdiction and Venue

14. The district court has exclusive jurisdiction over civil actions on claims against the United States for money damages related to personal injury or death caused by the negligent or wrongful act or omission of any employee and/or agent of the VA and the United States Government while acting within the scope of their office or employment. 28 U.S.C. § 1346(b)(1).

15. Plaintiff submitted an administrative tort claim to the U.S. Department of

Veterans Affairs on March 31, 2025, in compliance with 28 U.S.C. §2675(a). The claim was submitted using Standard Form 95 (SF 95) and included a demand for a specific sum of money damages.

16. More than six months have passed since the claim was filed with the VA. Therefore, under 28 U.S.C. §2675(a), the claim is deemed denied, and Plaintiff has complied with all prerequisites to file this claim in the District of Delaware.

17. Venue is proper in the District of Delaware, because it is the location of a substantial part of the events and omissions giving rise to the claims set forth herein. 28 U.S.C. §1391(b)(2).

## Factual Allegations

18. Plaintiff Roosevelt Hoggard served honorably in the U.S. Navy between 1972 and 1975.

19. At all relevant times, Mr. Hoggard has been a patient under the care of the U.S. Department of Veterans Affairs (hereinafter, the "VA") at the WVAMC in Wilmington, Delaware. Mr. Hoggard has been a patient of the VA since at least 2016.

20. The VA is vicariously liable for the negligence of its actual and apparent agents, servants and employees, including but not limited to Dr. Bhat, Nurse Williams, Nurse Sullivan, PA Webb-Davidson, Dr. Ottenbacher, and Dr. Rios.

21. The VA is vicariously liable for the negligence of its actual and apparent agents, servants and employees, including but not limited to Dr. Bhat, Nurse Williams, Nurse Sullivan, PA Webb-Davidson, Dr. Ottenbacher, and Dr. Rios.

22. At all pertinent times, the VA, through its agents, servants, and/or employees, including but not limited to Dr. Bhat, Nurse Williams, Nurse Sullivan, Dr. Ottenbacher, and Dr. Rios provided medical services and treatment to Mr. Hoggard.

23. On or around July 18, 2016, the VA, through its agents, servants, and/or employees, ordered blood testing of Mr. Hoggard, including measurement of his Prostate-Specific Antigen (or "PSA") level. Mr. Hoggard's PSA level was 1.1 ng/mL.

24. On or around July 25, 2017, the VA, through its agents, servants, and/or employees, ordered blood testing of Mr. Hoggard, including measurement of his PSA level. Mr. Hoggard's PSA level was 1.4 ng/mL.

25. On or around July 6, 2017, the VA, through its agents, servants, and/or employees, ordered blood testing of Mr. Hoggard, including measurement of his PSA level. Mr. Hoggard's PSA level was 1.3 ng/mL.

26. On or around January 9, 2018, the VA, through its agents, servants, and/or employees, ordered blood testing of Mr. Hoggard, including measurement of his PSA level. Mr. Hoggard's PSA level was 2.4 ng/mL.

27. On or around July 13, 2018, the VA, through its agents, servants, and/or employees, ordered blood testing of Mr. Hoggard, including measurement of his PSA level. Mr. Hoggard's PSA level was 2.23 ng/mL.

28. On or around May 28, 2019, the VA, through its agents, servants and/or employees, ordered blood testing of Mr. Hoggard, including measurement of his PSA level. Mr. Hoggard's PSA level was 2.49 ng/mL.

29. On or around May 27, 2020, the VA, through its agents, servants and/or employees including Dr. Bhat, ordered blood testing of Mr. Hoggard, including measurement of his PSA level. Mr. Hoggard's PSA level was 3.00 ng/mL.

30. On or around November 19, 2020, the VA, through its agents, servants and/or employees including Dr. Bhat, ordered blood testing of Mr. Hoggard, including measurement of his PSA level. Mr. Hoggard's blood tests resulted in a PSA level of 4.06 ng/mL.

31. Mr. Hoggard saw Dr. Bhat and/or other VA medical providers and staff regarding his healthcare over a dozen times after November 19, 2020. At no time between November 19, 2020 and July 24, 2024 did any healthcare provider at the VA order testing of Mr. Hoggard's PSA level, monitor his PSA level, discuss his elevated PSA level, discuss the risks and advantages of further screening for prostate cancer, discuss his particular risk factors for prostate cancer, refer him for evaluation for prostate cancer, or determine the cause of his ongoing back pain or urinary issues.

32. On April 23, 2021, Mr. Hoggard presented to the Emergency Department ("ED") at the VA with complaints of urinary urgency and frequency for two days. Amanda Webb-Davidson, MHS, PA-C, treated Mr. Hoggard in the ED. She ordered urinalysis and blood tests but did not order a test of Mr. Hoggard's PSA level. She did not review his prior blood test results with him.

33. On May 13, 2021, Mr. Hoggard had a primary care visit with Dr. Bhat. Dr. Bhat noted that "his blood sugar was running on the higher side." Dr. Bhat did not

discuss Mr. Hoggard's elevated PSA levels, recommend him for further screening for prostate cancer, or refer him to a urologist or other specialist for further evaluation for prostate cancer.

34. On June 3, 2021, Mr. Hoggard had a telehealth visit with Kathy H. Sullivan, NP, for diabetes care and management. Nurse Sullivan reviewed Mr. Hoggard's November 19, 2020 blood test results with him and included the results in her notes of the telehealth visit. Even though Mr. Hoggard's PSA level was listed as "4.06H," with "H" indicating a result higher than normal or reference range, Ms. Sullivan did not discuss Mr. Hoggard's elevated PSA levels, refer Mr. Hoggard for further screening or follow-up with Dr. Bhat or a urologist.

35. On September 23, 2021, Mr. Hoggard presented to the Emergency Department ("ED") at the VA with complaints of low back pain of a 6/10 for the prior one to two weeks. A CT of Mr. Hoggard's abdomen was performed without evidence of acute abnormalities noted in the abdomen or pelvis. Wendy Katherine Ottenbacher, M.D., ordered blood tests but did not request testing of Mr. Hoggard's PSA level. She did not discuss his elevated PSA level with him.

36. On September 30, 2021, Mr. Hoggard had a primary care visit with Dr. Bhat. Dr. Bhat noted that Mr. Hoggard had back pain that was getting better. She recorded that she would order him a heating pad. Dr. Bhat did not refer Mr. Hoggard for any further evaluation to determine what was causing his back pain, nor did she have any discussion with Mr. Hoggard regarding his PSA levels. She did not

recommend his having repeat testing of his PSA level, nor did she refer him for further evaluation for prostate cancer.

37. On November 4, 2021, Mary Kathleen Williams, RN, sent a letter to Mr. Hoggard regarding his enrollment in the VA's telehealth program. She specifically provided him with the history of his A1C levels for three blood tests between April 23, 2021 and October 7, 2021. Mr. Hoggard's A1C levels were labeled "H," or higher than normal or reference range. Nurse Williams provided Mr. Hoggard with recommendations to lower his elevated A1C levels and follow-up with his primary care provider. Nurse Williams did not mention Mr. Hoggard's elevated PSA levels at all, nor did she make any recommendations for further screening of prostate cancer.

38. On May 19, 2022, Mr. Hoggard had an endocrinology visit with Kathy H. Sullivan, NP. Nurse Sullivan reviewed Mr. Hoggard's lab results. She noted that he had complaints of low back pain. Nurse Sullivan did not make any recommendations for further evaluation of Mr. Hoggard's low back pain.

39. On April 20, 2022, Mr. Hoggard had a psychiatry visit with Omopariola Adegbola, M.D. Among other things, Dr. Adebgola reviewed Mr. Hoggard's vital signs, medications and new orders relating to his ongoing care. Dr. Adebgola did not discuss Mr. Hoggard's elevated PSA levels.

40. On March 30, 2022, Mr. Hoggard had a primary care visit with Dr. Bhat. Dr. Bhat noted that Mr. Hoggard was there "for follow up of his chronic conditions and … yearly exam." Dr. Bhat reviewed Mr. Hoggard's most recent labs, which did not

include his current PSA level, and planned to check his A1C level in three months.

41. On March 31, 2023, Mr. Hoggard had a visit with Optometrist Resident Cayla M. Hong and Staff Optometrist Rajni K. Archarya, O.D. Dr. Hong reviewed Mr. Hoggard's A1C lab results with him and discussed follow-up with his primary care physician.

42. On July 21, 2023, Mr. Hoggard was seen by Rishi Anand, M.D., for an endocrinology consult. Dr. Anand reviewed Mr. Hoggard's A1C levels, his family history for diabetes, his diet and his medications.

43. On July 26, 2023, Mr. Hoggard had a primary care visit with Dr. Bhat. Dr. Bhat did not discuss Mr. Hoggard's elevated PSA levels, order a test of his current PSA level, or make any recommendations for screening for prostate cancer.

44. On August 10, 2023, Mr. Hoggard had a psychiatry visit with Dr. Adegbola. Dr. Adegbola reviewed Mr. Hoggard's most recent labs and discussed Mr. Hoggard's risk factors for dementia.

45. On October 27, 2023, Mr. Hoggard had an endocrinology visit with Kathy H. Sullivan, NP, for diabetes management. Nurse Sullivan reviewed Mr. Hoggard's lab results and medications with him, and she made recommendations for management of his diabetes. She made no recommendations regarding prostate cancer screening or his past PSA levels.

46. On December 29, 2023, Mr. Hoggard had an endocrinology visit with Kathy H. Sullivan, NP, for diabetes management. Nurse Sullivan reviewed Mr.

Hoggard's lab results and medications with him. She noted that he had joint pain and occasional back pain. She made no recommendations for further evaluation of the cause of Mr. Hoggard's joint and back pain. She made no recommendations regarding prostate cancer screening or his past PSA levels.

47. On January 7, 2024, Mr. Hoggard presented to the ED at the Wilmington VA with complaints of left lower back pain that started three days prior. Mr. Hoggard denied any trauma to his back. He denied bladder incontinence but stated he used a pad as he sometimes leaked if he did not get to the bathroom in time. Urinalysis was conducted. Veronica Carranza Rios, M.D. stated that she reviewed the Electronic Medical Record (or EMR") lab work and noted that his October 2023 creatinine was within normal limits. Despite this history, no radiology studies were ordered of Mr. Hoggard's back or prostate. He was given Toradol, which provided relief, and discharged. Dr. Rios did not discuss his elevated PSA level or repeat PSA testing.

48. In January 10, 2024, Dr. Bhat acknowledged receipt of Dr. Rios's notes of Mr. Hoggard's ED visit.

49. On January 25, 2024, Nurse Williams sent Mr. Hoggard a letter advising him that he was discharged from the telehealth program because he had met his healthcare goals.

50. On February 8, 2024, Mr. Hoggard had a psychiatry visit with Dr. Adegbola. Dr. Adegbola noted that Mr. Hoggard was having "muscle spasms" for which he was using lidocaine patches.

51. On February 28, 2024, Mr. Hoggard had a primary care visit with Dr. Bhat for follow-up and management of his diabetes, back pain, memory issues and post-traumatic stress disorder. Dr. Bhat discussed exercise for his back, including stretching and noted that Mr. Hoggard had a heating pad. Dr. Bhat did not discuss Mr. Hoggard's elevated PSA levels or recommend that Mr. Hoggard have any screening for prostate cancer. She did not refer Mr. Hoggard for further evaluation or testing to identify the cause of his back pain or his urinary issues.

52. On March 6, 2024, Mr. Hoggard called and spoke with Nurse Julia Foulk who recorded a "nurse triage" note. Mr. Hoggard complained of left lower back pain that was a 7/10. He described it as ongoing and asked whether the VA could order him lidocaine patches. He stated the pain could be 9/10 at times.

53. Dr. Bhat acknowledged receipt of Nurse Foulk's triage note on March 6, 2024. Dr. Bhat did not take any action in response to reviewing the triage note regarding Mr. Hoggard's ongoing extreme left lower back pain.

54. On March 29, 2024, Mr. Hoggard had an endocrinology visit with Nurse Sullivan for diabetes management. Nurse Sullivan reviewed his relevant labs. She also recorded that he was using lidocaine patches for back pain.

55. On May 22, 2024, Mr. Hoggard had a psychiatry visit with Dr. Adegbola. Dr. Adegbola noted that Mr. Hoggard uses lidocaine patches for his back pain.

56. On June 28, 2024, Mr. Hoggard had an endocrinology visit with Nurse Sullivan for diabetes management.

57. During these aforesaid visits, neither Dr. Bhat nor anyone at the VA discussed with Mr. Hoggard (i) that his PSA levels were continuously increasing; (ii) his particular risk factors for prostate cancer, including but not limited to, family history, race and age; or (iii) the risks and benefits of further screening for prostate cancer. Nor was Mr. Hoggard referred for further evaluation by a urologist or other specialist or provided with recommendations to investigate the cause of his back pain. None of his providers monitored his PSA level.

58. On July 17, 2024, Mr. Hoggard presented to the ED at the VA complaining of shortness of breath. Mr. Hoggard's PSA level was finally obtained. It was 207.80. A TRUS biopsy was performed, and Mr. Hoggard was diagnosed with Stage IV metastatic prostate cancer.

59. On August 16, 2024, an MRI performed of Mr. Hoggard's spinal column demonstrated that a tumor had replaced most of the T-10 vertebral body. The cancer had metastasized to several vertebrae in Mr. Hoggard's cervical and lumbar spine, his pelvis and his ribs.

60. On August 21, 2024, Rajkumar D. Rao, M.D., the Chief of Surgical Services at the VA, stated that he did not believe that Mr. Hoggard was a surgical candidate given the neurological compromise caused by the spread of the cancer.

61. Defendants are all healthcare providers within the meaning of the Healthcare Malpractice Insurance Act, Chapter 68 of Title 18 of the Delaware Code, and are liable for the negligent acts and commissions of their agents, servants and

employees, who at all pertinent times were acting within the scope of their employment and agency.

62. All defendants are jointly and severally liable for the medical care rendered to Mr. Hoggard and any and all injuries to Mr. Hoggard.

### COUNT I
### MEDICAL NEGLIGENCE AGAINST THE U.S. DEPARTMENT OF VETERANS AFFAIRS, ROOPARANI BHAT, M.D., MARY KATHLEEN WILLIAMS, RN, KATHY SULLIVAN, NP, WENDY KATHERINE OTTENBACHER, M.D., VERONICA CARRANZA-RIOS, M.D., and AMANDA WEBB-DAVIDSON, PA-C

63. Plaintiff incorporates by reference its allegations as set forth in paragraphs one (1) through sixty-two (62) above as if the same were set forth fully herein.

64. The above Defendants, individually and by and through their actual and apparent agents, servants and employees, including Dr. Bhat, Nurse Sullivan, Nurse Williams, Dr. Ottenbacher, Dr. Rios, and PA-C Webb-Davidson, all of whom acted within the scope of their employment and agency, were negligent and breached the standard of care in the following particulars, among others:

   a. failed to take note of Mr. Hoggard's elevated PSA level in his November 19, 2020 blood test result;

   b. failed to take note of the continuing increase in Mr. Hoggard's PSA levels from July 13, 2018 through November 19, 2020;

   c. failed to discuss with Mr. Hoggard his particular risk factors for prostate cancer, including but not limited to his age, race and family history history;

   d. failed to refer Mr. Hoggard to a urologist or other specialist for further evaluation for prostate cancer;

    e. failed to monitor Mr. Hoggard's PSA level between November 19, 2020 and July 17, 2024 with repeat testing;

    f. failed to properly investigate the cause of Mr. Hoggard's ongoing back complaints;

    g. failed to timely, promptly, and properly diagnose Mr. Hoggard's condition;

    h. failed to properly follow Mr. Hoggard and his condition;

    i. failed to diagnose Mr. Hoggard's prostate cancer;

    j. failed to refer Mr. Hoggard for timely treatment;

    k. caused a delay in the diagnosis and treatment in Mr. Hoggard's cancer;

    l. failed to properly supervise the healthcare providers treating Mr. Hoggard; and

    m. were otherwise negligent in the care and treatment of Mr. Hoggard.

65. The Defendants, individually, and by and through their respective actual and apparent agents, engaged in a continuous course of medical negligence as detailed above.

66. As a direct and proximate result of the negligence of the Defendants, institutionally, and by and through their respective actual and apparent agents, employees and servants, Mr. Hoggard suffered personal injuries as follows:

    a. Advanced cancer;

    b. Development of metastasis;

    c. Increased risk of death;

    d. Substantial loss of opportunity of cure;

    e. Treatments and sequelae of treatments which otherwise would not have been required;

    f. Past and future physical pain and suffering;

    g. Past and future mental anguish;

    h. Past and future severe emotional distress;

    i. Loss of life's pleasures;

    j. Past and future medical expenses which otherwise would not have been incurred; and

    k. Likelihood of loss of life as a result of the advanced stage of the cancer.

67. As a direct and proximate result of the negligence of the Defendants, individually and by and through its respective actual and apparent agents, employees and servants, Mr. Hoggard's cancerous condition was ignored and allowed to progress without the appropriate medical intervention that would have afforded him a chance of cure and eliminated the risk of further growth of the cancer, and eliminated the risk of spread of the cancer, local and/or distant metastasis of the cancer, and recurrence and/or persistent cancer.

68. As a direct and proximate result of the negligence of the Defendants, individually and by and through their respective actual and apparent agents, employees and servants, Mr. Hoggard's disease was allowed to progress, untreated, exposing him

to an increased risk of harm, creating a lost opportunity and depriving him of treatment options that would have been available with an earlier, appropriate diagnosis, and eliminating his chance of cure.

69. As a direct and proximate result of the negligence of the Defendants, institutionally and by and through their respective actual and apparent agents, employees and servants, Mr. Hoggard suffered a progression of his cancer that will likely cause his death.

70. As a direct and proximate result of the negligence and breaches in the standard of care by the Defendants, institutionally and by and through their respective actual and apparent agents, employees and servants, Mr. Hoggard's likelihood of survival from his cancer has been reduced from a very high likelihood of long-term survival to little or no chance of survival.

71. As a direct and proximate result of the negligence and breaches in the standard of care by the Defendants, institutionally and by and through their respective actual and apparent agents, employees and servants, Mr. Hoggard has incurred and will continue to incur losses and expenses for necessary medical care, treatment, and rehabilitation.

72. As a further and direct proximate cause of the negligence and breaches in the standard of care by the Defendants, institutionally and by and through their respective actual and apparent agents, employees and servants, Mr. Hoggard has incurred and will incur in the future pain and suffering, disfigurement, disability,

mental anguish, emotional pain and suffering and other associated damages.

## COUNT II
## RESPONDEAT SUPERIOR
## U.S. DEPARMENT OF VETERANS AFFAIRS AND
## THE UNITED STATES OF AMERICA

73. Plaintiff incorporates by reference its allegations as set forth in paragraphs one (1) through seventy-two (72) above as if the same were set forth fully herein.

74. Defendants United States Department of Veterans Affairs and the United States of America are liable for the conduct of the medical providers who provided care to Roosevelt Hoggard from 2016 through 2024, pursuant to the doctrine of *respondeat superior* and/or apparent agency.

75. As a direct and proximate result of the medically negligent conduct and breaches of the applicable standard of care of the VA and the United States of America as aforesaid, Roosevelt Hoggard has suffered damages, including the following:

    a. Advanced cancer;

    b. Development of metastasis;

    c. Increased risk of death;

    d. Substantial loss of opportunity of cure;

    e. Treatments and sequelae of treatments which otherwise would not have been required;

    f. Past and future physical pain and suffering;

    g.    Past and future mental anguish;

    h.    Past and future severe emotional distress;

    i.    Loss of life's pleasures;

    j.    Past and future medical expenses which otherwise would not have been incurred; and

    k.    Likelihood of loss of life as a result of the advanced stage of the cancer.

## Prayer for Relief

**WHEREFORE,** Roosevelt Hoggard demands judgment in his favor and against the Defendants, jointly and severally, for the damages he has suffered, including any compensatory damages, special damages, general damages, damages for pain and suffering, including pain and suffering, pre- and post-judgment interest, attorneys' fees, for the costs of this action and any other relief this Court deems appropriate.

## Demand for Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

**SHELSBY & LEONI**

***/s/ Katherine J. Sullivan***
Robert J. Leoni (DE #2888)
*rleoni@mslde.com*
Katherine J. Sullivan (DE #5993)
*ksullivan@mslde.com*
221 Main Street
Wilmington, DE 19804
(302) 995-6210
*Attorneys for Plaintiff*

DATED:  October 23, 2025